# URGENT MOTION UNDER CIRCUIT RULE 27-3(b)

No. 13-57095

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

REBECCA FRIEDRICHS, et al.,

*Plaintiff-Appellants*,

v.

CALIFORNIA TEACHERS ASSOCIATION, et al.,

*Defendant-Appellees*,

KAMALA D. HARRIS, Attorney General of California,

*Defendant-Intervenor*,

On Appeal from the United States District Court
for the Central District of California, Santa Ana
No. 8:13-cv-00676-JLS-CW
Judge Josephine L. Staton

**APPELLANTS' URGENT MOTION FOR SUMMARY AFFIRMANCE
OR TO SUBMIT ON THE PAPERS**

**Action Necessary by October 31, 2014**

| | |
|---|---|
| Michael E. Rosman | Michael A. Carvin |
| CENTER FOR | *Counsel of Record* |
| INDIVIDUAL RIGHTS | James M. Burnham |
| 1233 20th Street, N.W. | William D. Coglianese |
| Suite 300 | JONES DAY |
| Washington, DC 20036 | 51 Louisiana Avenue, N.W. |
| 202.833.8400 | Washington, D.C. 20001 |
| | 202.879.3939 |

*Attorneys for Appellants*

Few appeals have an agreed outcome. But here, all sides recognize that currently binding Supreme Court and Circuit precedent require this Court to affirm the district court's entry of judgment on the pleadings against Appellants. The Appellants have filed this appeal in hopes of persuading the Supreme Court to overturn those binding decisions, but they acknowledge that this Court lacks the authority to overturn them itself. The most sensible step now is thus to summarily affirm the district court.

The Appellees, however, refuse to accept victory. They insist that rather than apply binding law, affirm the district court, and devote this Court's limited resources to considering *contested* appeals, the Court should ignore binding precedent, conduct a full-blown appeal, hear oral argument, and (presumably) issue a published opinion resolving hypothetical disputes that Appellants have speculated might matter in some unknown future world wherein the Supreme Court has overturned its and this Court's prior decisions. That makes no sense and would serve no purpose other than to waste this Court's and the parties' time. The Ninth Circuit is not a moot court, and Appellees have no right to oral argument under legal rules the Supreme Court has not yet announced. This Court, like all courts, disfavors pointless and excessive litigation. *See, e.g., Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011) Because *everyone* agrees that current law preordains the outcome here, the Court should summarily affirm the district court's decision, or, at the very least, submit the case on the briefs so that the merits panel to which it is assigned can issue a prompt decision.

It is clear what Appellees are trying to do. As long as the current regime remains, they can continue to compel Appellants to financially support their political speech pursuant to a system that they rightly fear will be invalidated by the Supreme Court under the First Amendment. Appellants thus respectfully request urgent consideration of this Motion under Circuit Rule 27-3(b), and a ruling on this Motion by October 31, 2014. Appellees have stated that they oppose this motion. But for the reasons set forth below, that position appears aimed chiefly at postponing the Supreme Court's consideration of Appellants' claims. This Court should not condone Appellees' attempt to shield their unconstitutional conduct with needless delay.

1. Appellants are California public-school teachers who have resigned their membership in the unions responsible for their respective districts. Nevertheless, Appellants are forced to pay annual dues to the unions as a condition of continued employment, pursuant to the "agency shop" arrangements that the Appellees—public-school teachers' unions and superintendents—have entered into under color of California law. As a result of these arrangements, Appellants (and all other non-union California public-school teachers) subsidize all union expenditures that the unions claim is germane to collective-bargaining. But public-sector collective-bargaining—which entails negotiating with public officials over matters of public policy and the expenditure of public funds—is core political expression, which Appellants cannot constitutionally be forced to support. Moreover, even though Appellants have affirmatively registered their opposition to union participation by resigning their memberships, California law authorizes the unions to take an

additional amount from all nonunion teachers to fund union political activities that have nothing to do with collective-bargaining, unless each nonmember affirmatively renews his dissent every year.

Appellants believe that both of these practices—the public-sector agency shop and the opt-out regime—violate the First Amendment. That position, although foreclosed by existing precedent, is well founded. Twice in the past two years, the Supreme Court has issued decisions casting significant doubt on the constitutionality of these practices. In *Knox v. Service Employees International Union, Local 1000*, the Court explained that the practices of "authorizing a union to collect fees from nonmembers and permitting the use of an opt-out system for the collection of fees levied to cover nonchargeable expenses … approach, if they do not cross, the limit of what the First Amendment can tolerate." 132 S. Ct. 2277, 2291 (2012). And just three months ago, in *Harris v. Quinn*, the Court reaffirmed that "[a]gency-fee provisions unquestionably impose a heavy burden on the First Amendment interests of objecting employees." 134 S. Ct. 2618, 2643 (2014).

2. All parties to this case recognize, however, that neither *Knox* nor *Harris* actually *holds* that the agency shop or the opt-out regime is unconstitutional. To the contrary, a line of precedent tracing back to the Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), currently permits both practices. And neither *Knox* nor *Harris* overruled *Abood*. *See, e.g.*, *Harris*, 134 S. Ct. at 2638, n.19 (noting "*Abood*'s questionable foundations," but concluding that "[i]t is … unnecessary for us to reach petitioners' argument that *Abood* should be overruled"). Thus, while Appellants believe that both the public-sector agency

- 3 -

shop and the opt-out regime are flatly irreconcilable with fundamental First Amendment principles, this Court currently lacks the authority to vindicate that position. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). There is thus nothing to be gained from prolonging the litigation of Appellants' claims in this Court at this time.

    a. Appellants' challenge to the agency shop is foreclosed by *Abood* itself, which rejected First Amendment challenges to the public-sector agency shop. Appellees and the California Attorney General (who intervened in this case to defend the California laws at issue) agree that *Abood* is dispositive. *See* Appellees' Br. at 12, Dkt. No. 35-1 (Sept. 2, 2014) ("The constitutionality of the agency shop was established by *Abood* … and has been reaffirmed in numerous subsequent decisions."); Cal. Att'y Gen. Br. at 15, 17 Dkt. No. 36-1 (Sept. 2, 2014) ("*Abood* and its progeny are and should remain the law…. Accordingly, it is and must remain the case that agency fees are constitutional.").

    b. Appellants' challenge to Appellees' opt-out regime is similarly foreclosed. In *Mitchell v. Los Angeles Unified School District*, this Court held that nonunion public employees "need be given only an opportunity to 'opt out' of full dues payments," rather than having to affirmatively "opt in" to such payments. 963 F.2d 258, 260 (9th Cir. 1992). And *Mitchell*, like *Abood,* is binding on panels of this Court. *See, e.g., In re Schwartz-Tallard*, 12-60052, -- F.3d --, 2014 WL

4251571, at *3 n.2 (9th Cir. Aug. 29, 2014) ("[W]e are bound by the decisions of prior panels so long as those decisions cannot be fairly distinguished."). Once again, Appellees and the Attorney General agree that *Mitchell* precludes this Court from vindicating Appellants' challenge to the opt-out regime. *See* Appellees' Br. at 30 ("The Unions agree that this Court is bound by *Mitchell* to affirm the judgment [on opt-out]."); Cal. Att'y Gen. Br. at 15 (agreeing that "this Court's decision upholding the use of opt-out requirements in *Mitchell* … is controlling").

In short, all parties recognize the inevitable outcome in this Court. The proper result is thus clear: the Court should summarily affirm the district court.

3. Summary affirmance is particularly warranted here because it is important that the Supreme Court review Appellants' First Amendment claims as soon as possible. As this Court and the Supreme Court have repeatedly recognized, "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976). While precedent forecloses this Court from accepting Appellants' First Amendment claims, it is clear, given *Knox* and *Harris*, that Appellees' regime raises serious First Amendment issues. Accordingly, Appellants have a clear and substantial interest in promptly getting to the one Court that *can* rule that the burdens on Appellants' speech are constitutionally intolerable. Conversely, Appellees' have no legitimate interest in delaying adjudication of their regime's constitutionality. In short, if Appellants' First Amendment claims are correct, they suffer irreparable injury from delay, but, if Appellees' constitutional views are

- 5 -

correct, they are in no way harmed by presenting that question to the Supreme Court expeditiously.

    4.  Despite agreeing that this Court must affirm the district court, Appellees insist that this Court should conduct oral argument and give lengthy consideration to issues that concededly are already definitively resolved by binding decisions. The purported rationale for this pointless delay and waste of judicial resources is Appellees' prophesy that, after the Supreme Court overturns this Court's decision in *Mitchell*, the "*particular* opt-out system at issue in this case would pass muster" under a future Supreme Court opinion that *generally* invalidates opt-out regimes. (Appellees' Br. at 31 (emphasis added)). *Thus*, although Appellees agree that this Court *must* rule in their favor, they want the Court to write an advisory opinion that shields their particular opt-out regime under a hypothetical future Supreme Court decision that invalidates such regimes generally.

    The Court should reject this request. *First*, Appellees have not articulated a theory under which some opt-out regimes would be unconstitutional but theirs would be valid. Instead, Appellees simply defend *all* opt-out regimes, arguing that "merely having to check a box on a form" is inherently "non-coercive and non-burdensome." *Id.* at 35. But this is nothing more than an argument that *Mitchell* was correct. This Court need not conduct argument and write a published opinion extolling the virtues of its binding decision in *Mitchell*.

    *Second*, even if Appellees *could* conjure up some basis for distinguishing this case from *Mitchell*, they would still be asking this Court to issue an advisory opinion that somehow "distinguishes" a currently nonexistent Supreme Court

opinion that will supposedly leave wiggle room for unions to preserve opt-out regimes in some form. But, of course, federal courts may only resolve actual cases or controversies; they may not issue advisory opinions on how this controversy would hypothetically be resolved if the Supreme Court issues a hypothesized opinion. This is particularly true here because it is virtually impossible to even hypothesize a Supreme Court opinion that suggests *this* opt-out regime is permissible but most others are not. If the Supreme Court agrees that the agency shop is unconstitutional—as the Court has twice indicated it may do—then *no* opt-out regime will be permissible because unions cannot take nonmembers' money *at all*. And even if the Court issued a narrower decision reaffirming the agency shop but voiding opt-out, Appellees offer no constitutional principle that would nullify *Mitchell* but permit annual opt-out regimes like theirs. There is no reason for this Court to join Appellees at the crystal ball, speculating about future line-drawing in opinions the Supreme Court might someday issue.

*Third*, Appellees' request is procedurally foreclosed. In the district court, Appellants filed a motion for judgment on the pleadings in which they preserved their challenges to the agency shop and opt-out regime, but conceded that currently binding precedent required the district court to enter judgment in Appellees' favor. *Friedrichs v. Cal. Teachers Ass'n*, No. 13-cv-676, Dkt. No. 81 (C.D. Cal. July 9, 2013). Appellees and the California Attorney General both agreed that this was the correct result. Dkt. No. 90 at 4 (Aug. 9, 2013) ("[T]he Unions do not oppose the entry of [] a judgment [in their favor]."); Dkt. No. 104 at 1 (Nov. 25, 2013) ("[B]ecause California law is consistent with well-established First Amendment

jurisprudence, plaintiffs' claims fail as a matter of law and judgment on the pleadings is warranted."). If Appellees intended to pursue some alternative grounds for a decision in their favor, the time for presenting that theory was in the district court—particularly given that any basis for distinguishing Appellees' opt-out regime from that at issue in *Mitchell* would necessarily rely on factual issues best left to the judgment of the district court in the first instance.

In short, Appellees' request that the Court conduct oral argument makes no sense. This Court should recognize this position for what it is—a thinly disguised attempt to delay the Supreme Court's consideration of this case. And the Court should reject that gambit and issue a decision resolving this appeal as soon as practicable.

## **CONCLUSION**

There could not be a stronger basis for summarily affirming a district court's decision than is presented in this case, where the parties are in total agreement that affirmance is mandated by binding precedent. In light of this unanimity as to the proper result, there is obviously no basis for allowing this case to consume the Court's limited resources by assigning it to a merits panel and conducting oral argument. Appellants thus respectfully request that the Court summarily affirm the district court's judgment, or, in the alternative, submit this case on the briefs so as to minimize the drain it will impose on a merits panel's resources.

- 9 -

Dated: October 3, 2014　　　　　　　　Respectfully submitted:

　　　　　　　　　　　　　　　　　　/s/ Michael A. Carvin
　　　　　　　　　　　　　　　　　　Michael A. Carvin
　　　　　　　　　　　　　　　　　　James M. Burnham
　　　　　　　　　　　　　　　　　　William D. Coglianese
　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　51 Louisiana Avenue, N.W.
　　　　　　　　　　　　　　　　　　Washington, D.C. 20001-2113
　　　　　　　　　　　　　　　　　　(202) 879-3939

　　　　　　　　　　　　　　　　　　Michael E. Rosman
　　　　　　　　　　　　　　　　　　CENTER FOR INDIVIDUAL RIGHTS
　　　　　　　　　　　　　　　　　　1233 20th St. NW, Suite 300
　　　　　　　　　　　　　　　　　　Washington, DC 20036

　　　　　　　　　　　　　　　　　　*Counsel for Appellants*

## CERTIFICATE OF SERVICE

     I hereby certify that on October 3, 2014, on behalf of Plaintiff-Appellants, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, for delivery within 3 calendar days to the following non-CM/ECF participants:

Christopher P. Burger
SCHOOLS LEGAL SERVICE
1300 17th Street
P.O. Box 2445
Bakersfield, CA 93303

*Counsel for Appellee Donald E. Carter*

Dated: October 3, 2014

Respectfully submitted,

  /s/ Michael A. Carvin
Michael A. Carvin
macarvin@jonesday.com
James M. Burnham
William D. Coglianese
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939

*Counsel for Appellants*